UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED BIOLOGICS, LLC D/B/A<br>UNITED ALLERGY SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>AMERIGROUP TENNESSEE, INC., d/b/a<br>AMERIGROUP COMMUNITY CARE, et al.,<br><br>Defendants. | No. 3:19-CV-180-TRM-DCP |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant Amerigroup Tennessee, Inc.'s Motion to Compel Serent Capital Compliance with the Subpoena Duces Tecum Served on Non-Party [Doc. 175].[1] Serent Capital Compliance ("Serent") filed a response in opposition [Doc. 192], and Defendant Amerigroup Tennessee Inc. ("Amerigroup") filed a reply [Doc. 211]. The motion is ripe for adjudication. Accordingly, for the reasons stated below, the Court **GRANTS** Amerigroup's Motion to Compel [**Doc. 175**].

**I. ANALYSIS**

By way of background, Amerigroup served Serent with a subpoena duces tecum on February 18, 2020. Serent is a non-party to this action but owns 40% of Plaintiff. In addition, Serent occupies two seats on Plaintiff's board of directors. Serent has produced some documents,

---

[1] Amerigroup served the subpoena duces tecum in dispute and filed the motion, but it represents that the other Defendants join in its motion because they also need the subpoenaed documents [Doc. 176 p. 1 n.1].

but the parties are at an impasse on what else should be produced. At the heart of the parties' dispute is Request No. 5 in the subpoena, which seeks the following:

> 5. All communications referring to or relating to Your monitoring of any investment by You in UAS or UAS' performance, profitability, or operations, including without limitation, Communications with UAS referring or relating to the issues identified in Request 4.

[Doc. 176-2 pp. 6–7].[2]  Request No. 4 seeks:

> All documents referring or relating to Your Monitoring of any investment by You in UAS or UAS' performance, profitability, or operations, including, without limitation, board presentations, budgets, financial performance, and/or strategic initiative reports, reports to Your investors, financial reporting packages, profit and loss reports, tax returns, financial statements, balance sheets, and materials reflecting distributions and shareholders.

[*Id.* at 6].

Before turning to the merits of the parties' dispute, Amerigroup argues that Serent has waived any objections to the subpoena because it did not timely assert them in accordance with Federal Rule of Civil Procedure 45(d)(2)(B). Amerigroup asserts that Serent was required to serve its objections by March 3, 2020, and that it failed to meet this deadline. In addition, Amerigroup states that in the nearly two (2) years that it served the subpoena, Serent has not moved to quash or modify the subpoena, and therefore, the Court should find the objections waived and order compliance with the subpoena.

The Court finds that Serent has not waived its objections. Serent represents that on March 10, 2020, counsel for Plaintiff and counsel for Amerigroup conferred telephonically and agreed that Plaintiff's counsel would accept service of the subpoena and that Serent could have until April

---

[2] Serent argues that Amerigroup has not specifically identified any requests to which Serent's response was deficient and that the subpoena did not request internal communications [Doc. 192 pp. 7–8]. The Court notes, however, that Request No. 5 in the subpoena covers internal communications, as Serent alludes to in its response [*Id.* at 8 n.2].

2

7, 2020, to answer the subpoena [Doc. 192 p. 2]. Serent filed an email supporting this representation [Doc. 192-1 p. 1]. Specifically, Plaintiff's counsel wrote to Amerigroup's counsel, "Thanks for the time this morning. This is to confirm Serent has an extension of until 4/7 to respond." [*Id.*]. Amerigroup does not dispute the contents of this email or provide the Court with evidence refuting this agreement.

Accordingly, the Court finds Amerigroup's argument that Serent waived its objections by serving them upon the agreed deadline to do so not well taken. Similarly, Amerigroup argues that Serent did not move to quash the subpoena, but the parties continued to participate in meet and confers throughout the years. The Court declines to find that Serent waived its objections under these circumstances. *See generally Zamorano v. Wayne State Univ.*, No. 07-12943, 2008 WL 597224, at *1 (E.D. Mich. Mar. 3, 2008) (explaining that courts may consider untimely objections if the subpoena (1) is overbroad on its face and exceeds the bounds of fair discovery; (2) the non-party acted in good faith; and (3) the party and non-party were in contact concerning compliance).

The Court will now turn to the merits of the dispute. The parties primarily dispute whether the relevancy of Amerigroup's requested documents outweighs the burden on Serent. Amerigroup asserts that the documents it seeks are plainly relevant to key issues and defenses in this case given Plaintiff's allegations that, but for Defendants' anti-competitive or tortious conduct, Plaintiff's allergy business in Tennessee would not have been damaged and Plaintiff would have thrived. Amerigroup states that it is likely that Serent possesses relevant communications because Serent, as Plaintiff's most significant investor, continuously monitored Plaintiff's performance, analyzed Plaintiff's financial health, and evaluated Plaintiff's present and future performance and potential profitability. For example, Amerigroup states that in 2013, Serent discussed Plaintiff's "severe and self-inflicted wounds" pertaining to Plaintiff's profitability and performance, and in 2017,

3

Serent analyzed Plaintiff's poor financial performance, including a drop in production, its sub-optimized field management, and the lower-than-expected new clinics due to various issues. Amerigroup asserts that Serent noted similar problems in 2018.

Amerigroup states that while it has some responsive documents as noted above, Serent unilaterally limited its production to two categories of documents: (1) emails between it and Plaintiff from 2012 to 2015, and (2) twenty heavily redacted Serent board reports. Amerigroup argues that the First Amended Complaint seeks damages from 2014 to 2020. Amerigroup complains that Serent has not produced any emails, internal or external, dated after 2015, and has refused to produce any "Serent-only" communications regarding Plaintiff.

Serent responds that it has already produced the information Amerigroup claims that it needs. Specifically, Serent states that it has produced documents and communications that include: (1) Serent's decision to invest in Plaintiff, (2) Serent's monitoring of its investment in Plaintiff, (3) analyses of Plaintiff's financial performance, (4) evaluations of Plaintiff's business model, (5) Plaintiff's board of managers meeting minutes, (6) reports presented to Plaintiff's board of managers, (7) Plaintiff's financial statements, (8) tax forms, (9) Plaintiff's budgeted forecasts, and (10) valuations of Plaintiff by the McLean Group. Serent explains that Plaintiff only seeks damages for conduct in Tennessee and that Amerigroup has sufficient information to determine Plaintiff's damages in Tennessee. Serent states that the discovery request is burdensome. In support of its argument, David Kennedy ("Kennedy"), the general partner of Serent, filed a declaration stating as follows:

> 9. In response to the Motion to Compel, Serent once again revisited its search for responsive email communications. To determine exhaustively whether and the extent to which responsive email communications exist, Serent would need to search the email archives of all Serent employees and representatives that had any involvement with UAS. In total, there were approximately a dozen

4

individuals at Serent who were involved with UAS. Most of those individuals, however, have not been materially involved with UAS since 2015 and/or are no longer associated with Serent.

10. The primary custodians at Serent materially involved with UAS after 2015 are myself, Navid Oreizy, and Dan Margolis. Mr. Oreizy recently left Serent and currently works for another firm. It is highly unlikely that any email communications regarding UAS occurred within Serent that did not involve at least one of these three custodians.

11. Serent has searched the current and archived email records of me, Mr. Oreizy, and Mr. Margolis for the terms "United Allergy" and "UAS." The search yielded 23,606 emails from January 1, 2015[,] to present. A cursory review of a selection of these records reveals that the vast majority of them are unrelated to UAS's operations in Tennessee. Similarly, the records include numerous communications with legal counsel, as well as board materials, financial statements, and other documents and communications that have already been produced to Amerigroup by Serent and/or UAS.

12. Applying the additional search term "Tennessee" reduces the volume of emails to 588—or 2,148 including families. Even with this addition limitation, however, many of these emails include communications with legal counsel and communications Serent has already produced, such as those related to Quarterly Reports. The search also captures pitches Serent has made to other companies where Serent has mentioned UAS in its pitch decks or included information regarding prior investments to demonstrate a track record. Such materials are highly confidential commercial information.

[Doc. 192-2 ¶¶ 9–12]. Serent also claims that the cost of responding to Amerigroup's request is substantial. Casey Low, counsel for Plaintiff and for Serent, submits the following:

> 6. I have been lead counsel for UAS on this case since its inception and have practiced law since 2003. I have reviewed the time entries billed to this matter by Pillsbury attorneys and staff through February 7, 2022. After identifying all entries related to Serent Capital, I determined that Pillsbury has billed approximately $134,461.50 in connection with Serent's response to Amerigroup's subpoena and related issues through February 7, 2022.
>
> 7. I understand that an initial culling of email communications responsive to Amerigroup's request for Serent's internal

5

> communication results in approximately 23,606 emails, which would need to be reviewed for responsiveness, relevance, privilege, and confidential information before being produced to Amerigroup.
>
> 8. Assuming a typical review rate of 60 documents per hour and the standard rate of $145 per hour for a Pillsbury contract attorney, it would cost approximately $61,142 to conduct a first-level review of 23,606 emails for relevance. Next, Pillsbury attorneys would need to conduct a second-level review for responsiveness, privilege, and confidential information. Assuming an estimated rate of $560 per hour and 120 documents per hour, this would result in an additional cost of approximately $110,161.24. Conducting a quality-check privilege review and preparing a privilege log would cost approximately $8,338 to $16,676.
>
> 9. Thus, responding to Amerigroup's request would likely cost Serent an estimated $179,641.24. In reality, and based on my experience in this case specifically and with ESI discovery generally, the true cost to Serent would likely be much greater, because Pillsbury attorneys would need to be involved at all stages of the production, and these review estimates do not include the cost of hosting and processing Serent's data.

[Doc. 192-3 ¶¶ 6–9].

Serent adds that the burden of further compliance would be particularly undue considering the records that it has already produced in this case. Serent states that it has provided documents, despite their irrelevancy, regarding its own impressions about Plaintiff's actual performance, lack of growth, and business and operational challenges. For example, Serent claims that it has already produced the quarterly reports to its limited partners from 2016 to 2021, which includes Serent's quarterly evaluation of its investments. Serent asserts that the documents and communications already produced fully enable Amerigroup to ascertain Serent's irrelevant opinion of Plaintiff's financial information and that to the extent Amerigroup seeks additional information on the subject, Serent argues that Amerigroup can depose Serent's representative. In the event that the Court is inclined to grant the motion, Serent requests the Court to limit its production to include

only the search terms "Tennessee," "United Allergy," and "UAS" in order to reduce the volume of emails. In addition, Serent requests that the Court shift the costs of production to Amerigroup.

Amerigroup replies [Doc. 211] that the Court should view Rule 45's prohibition against undue burden differently because Serent is an interested party given that it owns 40% of Plaintiff, has a financial stake in this litigation, and is involved with Plaintiff's management and decision making. Thus, Amerigroup asserts that Serent is not a disinterested third party for purposes of Rule 45.

Further, Amerigroup states that Serent has already conducted a search of emails and located over 23,000 emails and that Serent can simply produce all the documents to Amerigroup so that Amerigroup bears the burden of reviewing the document production. Amerigroup contends that Serent's production will be protected by the Protective Order in this case and that Serent can conduct a privilege review by searching for Serent's legal counsel in the email production. Amerigroup adds that the Protective Order contains a claw back provision in the event Serent produces privileged documents.

Amerigroup asserts that the requested documents are relevant because Defendants need to establish that factors other than their conduct caused Plaintiff's customers (i.e., medical providers) to terminate their relationships with Plaintiff in Tennessee. Amerigroup states that Serent's internal communications are expected to address that issue because as Plaintiff's largest investor, it consistently monitored Plaintiff's ability to attract and maintain relationships with medical providers, which is at the core of Plaintiff's business model. Amerigroup states that Serent's principals and custodians undoubtedly discussed Plaintiff's issues and the reasons why Plaintiff's existing and new clinic count continued to decline over the years.

With respect to Serent's request to limit the subpoena to Tennessee because Plaintiff only seeks damages for the conduct in Tennessee, Amerigroup states that it did not limit the subpoena to Tennessee and that its subpoena seeks to uncover information about damages and liability. Further, Amerigroup argues that presumably Serent does not analyze Plaintiff's business on a state-by-state basis because Plaintiff does not. Amerigroup argues that the un-redacted board slides Serent produced confirms that it did not analyze, evaluate, or monitor Plaintiff's business on a state-by-state basis.

Finally, Amerigroup asserts that Serent's cost estimates that form the basis of its undue burden argument are dubious. Amerigroup states that for example, while Serent claims to have spent over $100,000 already, it only made two productions in this case: (1) the production on April 13, 2020, which contained 789 documents, and the (2) production on November 5, 2021, which contained 20 documents. Amerigroup states that it is unclear why Serent spent this large amount when it also admitted that the production was overlapped with documents and communications that Serent already produced in separate litigation involving Plaintiff.[3] Amerigroup states that Serent's opposition does not address the other cost savings measures to which Serent and Defendants may agree, such as excluding already-produced documents and eliminating communications with counsel since the subpoena was served.

Rule 45 governs discovery requests served on non-parties. Courts may quash or modify a subpoena that subjects the non-party to undue burden. Fed. R. Civ. P. 45(c)(3)(iv). Rule 45(d)(1) provides that "a party or attorney responsible for issuing and serving a subpoena must take

---

[3] The Court notes that the Declaration of David Kennedy states that he worked on responding to the subpoena and that he "identified that the documents and communications responsive to the subpoena substantially overlap with documents and communications that Serent had produced in separate litigation involving [Plaintiff]." [Doc. 192-2 ¶ 2].

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." With respect to the status of a non-party, some courts have viewed the "Rule 45's prohibition against unduly burdening a non-party through a different lens when the non-party is not truly disinterested." *Culliver v. Ctr. for Toxicology & Env't Health LLC*, No. 3:21-CV-4942-MCR-GRJ, 2022 WL 475185, at *4 (N.D. Fla. Feb. 16, 2022).

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S. D. Ohio 2011). Rule 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Sagebrush Solutions, LLC v. Health Mgmt. Sys.,* 289 F.R.D. 251, 253 (S.D. Ohio 2013); *see also In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) ("Undue burden is to be assessed in a case-specific manner considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period

9

covered by it, the particularity with which the documents are described and the burden imposed.") (citation omitted).

The Court has weighed Amerigroup's need for the requested discovery versus the burden on Serent. The Court has also considered that, while Serent is a non-party to this litigation, it has an interest in this litigation given that it owns 40% of Plaintiff and occupies two seats on Plaintiff's board. The Court finds that Amerigroup's need for this discovery outweighs the burden on Serent. Plaintiff alleges in this matter that Defendants engaged in anti-competitive conduct such that it financially damaged Plaintiff. Amerigroup asserts that it seeks the discovery to "examine contemporaneous communications [Plaintiff] had with Serent regarding [Plaintiff's] performance and growth prospects" and Serent's own impressions concerning [Plaintiff's] financial performance, lack of growth and business and operational challenges [Doc. 176 p. 2]. In light of Serent's role as a major investor in Plaintiff and the broad scope of discovery, the Court finds Amerigroup's need for such discovery outweighs the burden on Serent.

Serent states that it will cost a substantial amount to produce the requested discovery [Doc. 192-3 ¶¶ 8–9]. While the Court has considered Serent's estimated costs, the Court is not persuaded that Serent's costs are as substantial as Serent has suggested.[4] For instance, Kennedy states that Serent has already performed a cursory review of the 23,606 emails, and the "vast majority are unrelated to [Plaintiff's] operations in Tennessee." [*Id.* ¶ 11]. Thus, it appears to the Court that Serent has already performed the bulk of the work that it is claiming is unduly burdensome and expensive. Moreover, Amerigroup has offered to engage in discussions with Serent in order for the parties to arrive at cost saving measures [Doc. 211 p. 11]. For instance, Serent does not need

---

[4] The Court also notes that while Serent's estimate seems large to the average person, Serent did not provide any evidence that this amount would constitute on an undue burden for Serent.

10

to produce documents that have already been produced, and Serent may eliminate communications with counsel since Amerigroup served the subpoena. In addition, the parties should meet and confer to determine the appropriate search terms in order to decrease the number of emails generated from the search.

Further, Serent requests that the Court limit the production to emails that include the additional term "Tennessee," submitting that adding the term reduces the volume of emails to 588—or 2,148 including families. The Court declines to add this limitation at this time because Serent has not explained whether adding the search term "Tennessee" would result in an under-inclusive response. Amerigroup states that Plaintiff does not organize its business on a state-by-state basis and that presumably Serent does not analyze Plaintiff's business on a state-by-state business. While the Court declines to order this limitation, the Court directs the parties to meet and confer on whether adding the term "Tennessee" would result in an appropriate search for emails.

Finally, Serent requests that the Court shift the costs of production to Amerigroup. Non-parties "can be required to bear some or all of [their] expense[s] where the equities of a particular case demand it." *Liebman v. Methodist Le Bonheur Healthcare*, No. 3:17-CV-0902, 2021 WL 6504101, at *4 (M.D. Tenn. Apr. 16, 2021) (citation omitted). In determining whether to shift costs, courts may weigh whether the non-party has an interest in the litigation and whether the litigation is of public importance. *Id.* (citations omitted). Some courts have also considered whether the non-party can more readily bear the costs than the requesting party. *Alabama Aircraft Indus., Inc. v. Boeing Co.,* No. 2:11-CV-03577-RDP, 2016 WL 9781825, at *4 (N.D. Ala. Feb. 25, 2016).

Here, there is no question that Serent has an interest in this lawsuit given that it owns 40% of Plaintiff and occupies two seats on Plaintiff's board. *Id*. at *5 ("An interested non-party is an

11

entity that does not have an actionable right at issue in the litigation, but has a significant, underlying connection to the case and, typically, some sort of financial or reputational stake in the litigation's outcome."). The Court also finds that the litigation appears to be of public importance in light of Plaintiff's allegation that Defendants engaged in anticompetitive conduct, and thus, prevented consumers from receiving healthcare services [Doc. 103 ¶¶ 2, 97–99]. Finally, neither Serent nor Amerigroup has argued whether Serent can more readily bear the costs than Amerigroup. The Court notes, however, that Serent appears to be financially healthy and can afford the costs of production.

## II. CONCLUSION

Accordingly, for the reasons stated below, the Court **GRANTS** Amerigroup's Motion to Compel [**Doc. 175**]. The parties **SHALL**, however, engage in a meet and confer, as Amerigroup has suggested, to determine any appropriate search limitations.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge